**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC. and LEHMAN BROTHERS SPECIAL FINANCING, INC.<br><br>Plaintiffs,<br>-against-<br><br>CREDIT PROTECTION TRUST 207, FSA ADMINISTRATIVE SERVICES, LLC, as Trustee for the CREDIT PROTECTION TRUST 207 and FINANCIAL SECURITY ASSURANCE INC. n/k/a ASSURED GUARANTY MUNICIPAL CORPORATION,<br><br>Defendants. | Adv. Proc. No. 12-01980 |

**ANSWER TO DEBTORS' AMENDED ADVERSARY COMPLAINT AND CLAIM OBJECTION AND DEFENDANTS' COUNTERCLAIMS**

Defendants Credit Protection Trust 207 ("CPT 207"), FSA Administrative Services, LLC ("FSA Admin") and Assured Guaranty Municipal Corp. (f/k/a Financial Security Assurance Inc.) ("Assured," and together with CPT 207 and FSA Admin, "Defendants"), by their undersigned attorneys, as and for their Answer to the Debtors' Amended Adversary Complaint and Claim Objection, dated November 20, 2012 (the "Amended Complaint"), respectfully state as follows:

1. Deny the allegations in Paragraph 1, except admit and aver that this action purports to seek to disallow certain claims and recover approximately $1,460,154.22 plus interest.

2. Deny the allegations in Paragraph 2, except admit and aver that CPT 207 has filed proofs of claim in the amount of $492,555.22 in the above-captioned Chapter 11 case.

3. Deny the allegations in Paragraph 3 and respectfully refer the Court to the ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("LBSF") and CPT 207 dated as of July 15, 2005, and all schedules thereto and confirmations thereunder (together, the "Agreement") for the full contents thereof.

4. Deny the allegations in Paragraph 4, except admit upon information and belief that Lehman Brothers Holdings Inc. ("LBHI") commenced its Chapter 11 case on September 15, 2008.

5. Deny the allegations set forth in Paragraph 5, except admit and aver that (i) on September 22, 2008, LBSF failed to make a fixed payment of $65,277.78, as required under the Agreement; (ii) on September 23, 2008, CPT 207 notified LBSF and LBHI that LBSF had failed to make the required fixed payment to CPT 207, and that if this failure was not cured on or before September 26, 2008, such failure would constitute an Event of Default under Section 5(a)(i) of the Master Agreement and would result in LBSF owing to CPT 207 the Termination

Payment; (iii) LBSF did not remedy its failure to make payment on or before September 26, 2008 (the third business day after CPT 207 provided notice of the failure), and consequently that failure constituted an Event of Default under the Agreement; and (iv) on September 29, 2008, CPT 207 notified LBSF and LBHI that CPT 207 designated September 29, 2008 as an Early Termination Date in respect of all Transactions under the Agreement and specified LBSF's failure to pay as the Event of Default.[1] Defendants further admit upon information and belief that LBSF commenced its Chapter 11 case on October 3, 2008.

6. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7. Paragraph 7 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 7.

8. Paragraph 8 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 8.

9. Deny the allegations in Paragraph 9, except admit and aver that LBSF and LBHI (together, the "Debtors") owe no less than $492,555.22 to CPT 207.

10. Deny the allegations in Paragraph 10.

11. Paragraph 11 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 11.

12. Deny that the Debtors are entitled to the relief sought in Paragraph 12.

## JURISDICTION AND VENUE

13. Deny the allegations in Paragraph 13.

14. Paragraph 14 purports to state legal conclusions as to which no response is

[1] All capitalized terms not defined herein have the meaning ascribed to them in the Agreement.

required. To the extent a response is required, Defendants deny the allegations in Paragraph 14.

15. Paragraph 15 purports to state legal conclusions as to which no response is required.

16. Paragraph 16 purports to state legal conclusions as to which no response is required.

**PARTIES**

17. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, except admit upon information and belief that LBHI commenced its Chapter 11 case in this Court on September 15, 2008, and that LBSF commenced its Chapter 11 case in this Court on October 3, 2008.

18. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19. Deny the allegations in Paragraph 19, except admit and aver that (i) CPT 207 is a common law trust organized and existing under the laws of the State of New York; (ii) FSA Admin is a New York limited liability company and the Trustee for CPT 207; (iii) Assured is a New York corporation; and (iv) the principal place of business for FSA Admin and Assured is located at 31 West 52 Street, New York, NY 10019.

20. Deny the allegations in Paragraph 20.

**BACKGROUND**

21. Deny the allegations in Paragraph 21, except admit and aver that CPT 207 has filed proofs of claim in the amount of $492,555.22 in the Chapter 11 cases of LBSF and LBHI.

22. Deny the allegations in Paragraph 22, except admit and aver that CPT 207 submitted a Derivatives Questionnaire in connection with its claims against LBSF on September

14, 2009, including supporting documentation.

23. Deny the allegations in Paragraph 23, except admit upon information and belief that this adversary proceeding and claim objection concern the Agreement.

24. Deny the allegations in Paragraph 24, except admit and aver that CPT 207 and LBSF are parties to the Agreement.

25. The allegations in Paragraph 25 are general in nature and purport to apply to credit derivative transactions generally, including transactions with which Defendants were not involved. As such, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25. To the extent the allegations in Paragraph 25 pertain to the transactions at issue, Defendants deny that the allegations set forth a complete and accurate statement with respect to the transactions under the Agreement and respectfully refer the Court to the Agreement for the full contents thereof.

26. Deny the allegations in Paragraph 26.

27. Paragraph 27 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 27 and respectfully refer the Court to the Agreement for the full contents thereof.

28. Paragraph 28 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 28 and respectfully refer the Court to the Agreement for the full contents thereof.

29. Deny the allegations in Paragraph 29, except admit and aver that in Defendants' notice designating September 29, 2008 as an Early Termination Date in respect of all Transactions under the Agreement, CPT 207 specified LBSF's failure to pay as the Event of Default.

30. Deny the allegations in Paragraph 30, except admit and aver that LBSF was required to make payments to CPT 207 under the Agreement as specified therein, and respectfully refer the Court to the Agreement for the full contents thereof.

31. Paragraph 31 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Agreement for the full contents thereof.

32. Paragraph 32 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Agreement for the full contents thereof.

33. Paragraph 33 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Agreement for the full contents thereof.

34. Paragraph 34 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 34 and respectfully refer the Court to the Agreement for the full contents thereof.

35. Paragraph 35 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Agreement for the full contents thereof.

36. Paragraph 36 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 36.

37. Deny the allegations in Paragraph 37.

38. Paragraph 38 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the

Agreement for the full contents thereof.

39. Deny the allegations in Paragraph 39.

40. Deny the allegations in Paragraph 40.

41. Deny the allegations in Paragraph 41.

42. Paragraph 42 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 42.

43. Deny the allegations in Paragraph 43.

44. Deny the allegations in Paragraph 44.

45. Deny the allegations in Paragraph 45.

46. Paragraph 46 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 46 and respectfully refer the Court to the Agreement for the full contents thereof.

47. Deny the allegations in Paragraph 47.

**FIRST CAUSE OF ACTION**

48. Defendants incorporate their responses to the foregoing paragraphs as if set forth herein.

49. Paragraph 49 does not contain any factual allegations, and therefore no response is required.

50. Deny the allegations in Paragraph 50.

51. Deny the allegations in Paragraph 51.

52. Deny the Debtors are entitled to the relief sought in Paragraph 52.

**SECOND CAUSE OF ACTION**

53. Defendants incorporate their responses to the foregoing paragraphs as if set forth

herein.

54. Paragraph 54 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 54.

55. Paragraph 55 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 55.

56. Paragraph 56 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 56.

**THIRD CAUSE OF ACTION**

57. Defendants incorporate their responses to the foregoing paragraphs as if set forth herein.

58. Paragraph 58 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 58.

59. Deny the allegations set forth in Paragraph 59, except admit and aver that CPT 207 acted in accordance with the Agreement, including on September 23, 2008, when it notified LBSF and LBHI that LBSF had failed to make the required Fixed Payment to CPT 207, and that if this failure was not cured on or before September 26, 2008, such failure would constitute an Event of Default under Section 5(a)(i) of the Master Agreement and would result in LBSF owing to CPT 207 the Termination Payment, and on September 29, 2008, when it notified LBSF and LBHI that it was designating September 29, 2008 as an Early Termination Date in respect of all Transactions under the Agreement.

60. Paragraph 60 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 60.

61. Deny the allegations in Paragraph 61, except admit and aver that Assured

"[c]onsented to" the notice from CPT 207 to LBSF dated September 29, 2008 as stated in the notice.

62. Paragraph 62 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 62.

63. Paragraph 63 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 63.

**FOURTH CAUSE OF ACTION**

64. Defendants incorporate their responses to the foregoing paragraphs as if set forth herein.

65. Paragraph 65 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 65.

66. Paragraph 66 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 66.

67. Paragraph 67 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 67.

68. Paragraph 68 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 68.

69. Paragraph 69 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 69.

70. Paragraph 70 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 70.

71. Deny the allegations in Paragraph 71.

72. Deny the allegations in Paragraph 72.

## FIFTH CAUSE OF ACTION

73. Defendants incorporate their responses to the foregoing paragraphs as if set forth herein.

74. Paragraph 74 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 74.

75. Paragraph 75 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 75.

76. Paragraph 76 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 76.

77. Paragraph 77 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 77.

78. Deny the allegations in Paragraph 78.

## SIXTH CAUSE OF ACTION

79. Defendants incorporate their responses to the foregoing paragraphs as if set forth herein.

80. Paragraph 80 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 80, except admit and aver the Agreement is valid and enforceable.

81. Paragraph 81 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 81.

82. Paragraph 82 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 82.

83. Deny the allegations in Paragraph 83.

84. Paragraph 84 purports to state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the Debtors are entitled to the relief sought in Paragraph 84.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof where such burden properly rests with the Debtors, and without waiving (and hereby expressly reserving) the right to assert any and all such defenses at such time and to the extent discovery establishes a basis therefor, Defendants hereby assert the following affirmative defenses to the claims asserted in the Amended Complaint:

### FIRST AFFIRMATIVE DEFENSE

85. The Amended Complaint fails, in whole or in part, to state a claim on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

86. The Debtors are not entitled to the relief the seek under the Agreement.

### THIRD AFFIRMATIVE DEFENSE

87. The Debtors' claims are barred, in whole or in part, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

88. To the extent that the damages claimed by Plaintiffs are speculative, uncertain and/or contingent, they are not recoverable.

### FIFTH AFFIRMATIVE DEFENSE

89. The Debtors' claims are barred, in whole or in part, by the doctrines of laches and waiver.

### SIXTH AFFIRMATIVE DEFENSE

90. The Debtors' claims are barred because they have not suffered any injury or damages.

SEVENTH AFFIRMATIVE DEFENSE

91. The Debtors are not entitled to the rights they claim under Financial Guaranty Insurance Policy No. 51648-N.

**RESERVATION OF RIGHTS**

Defendants hereby give notice that they do not consent to this Court entering a final judgment in this proceeding. Defendants further give notice that they intend to rely upon any other claim or defense that may become available or appear during the pre-trial proceedings, based upon evidence developed in discovery or otherwise, and reserve the right to amend this Answer to assert any such claims or defenses.

**COUNTERCLAIMS**

92. Defendants, by their undersigned counsel, as and for their counterclaims, upon knowledge as to matters in which they were directly involved and upon information and belief as to all other matters hereby allege as follows:

**NATURE OF THE COUNTERCLAIMS**

93. These counterclaims are for declaratory judgment, breach of contract, and attorneys' fees.

94. In these counterclaims, Defendants seek damages from LBSF based on LBSF's undisputed breach of the Agreement of no less than $492,555.22, which amount represents the contractually agreed upon termination payment due by LBSF to CPT 207 under the Agreement as a result of LBSF's failure to make a fixed payment to CPT 207 pursuant to the Agreement. Defendants further seek damages from LBHI based on LBHI's undisputed breach of its

Guarantee dated July 14, 2005, under which it guaranteed LBSF's payment obligations to CPT 207.

## JURISDICTION AND VENUE

95. The United States District Court for the Southern District of New York has subject matter jurisdiction under 28 U.S.C. § 1334, and this Court may issue proposed findings of fact and conclusions of law with respect to the Defendants' counterclaims. Further, to the extent that this Court has jurisdiction over the claims asserted by the Debtors in this action under 28 U.S.C. §§ 157 and 1334, it has jurisdiction on the same basis over the Defendants' counterclaims, as well as supplemental jurisdiction under 28 U.S.C. § 1367 because the Defendants' counterclaims arise out of the subject matter of the original action and are brought under Rule 13 of the Federal Rules of Civil Procedure and Rule 7013 of the Federal Rules of Bankruptcy Procedure.

96. Venus is proper pursuant to 28 U.S.C. § 1409.

## PARTIES

97. Counterclaim Plaintiff CPT 207 is a common law trust organized and existing under the laws of the State of New York.

98. Counterclaim Plaintiff FSA Admin is a New York limited liability company and the Trustee for CPT 207. Its principal place of business is located at 31 West 52 Street, New York, NY 10019.

99. Counterclaim Plaintiff Assured is a New York corporation. Its principal place of business is located at 31 West 52 Street, New York, NY 10019.

100. LBSF commenced a voluntary case under chapter 11 of the Bankruptcy Code on October 3, 2008. Its principal place of business is 1271 Sixth Avenue, New York, NY 10020.

101. LBHI commenced a voluntary case under chapter 11 of the Bankruptcy Code on September 15, 2008. Its principal place of business is 1271 Sixth Avenue, New York, NY 10020.

## BACKGROUND

102. Defendants repeat the denials and averments of paragraphs 1 through 84 above.

### A. The Agreement and LBHI's Guarantee

103. On July 15, 2005, CPT 207 and LBSF entered into a credit default swap transaction (the "Transaction"), the terms of which were set forth in the Agreement. At the time, LBSF was a highly sophisticated market participant with substantial experience in negotiating similar transactions. The Agreement was the product of arms-length negotiations in which LBSF was represented by counsel.

104. Under the Agreement, LBSF agreed to make quarterly fixed payments to CPT 207. In return, CPT 207 agreed to make floating payments to LBSF in the event that specified credit events occurred in connection with certain identified reference obligations. LBSF and CPT 207 recognized that at the time the contract was entered into they could not anticipate whether either party would default nor could either party at the time calculate precisely the losses that might flow from any such default. Consequently, the parties negotiated and agreed to include a series of carefully crafted provisions in the Agreement governing the calculation of damages in the event of various types of defaults.

105. As part of the Transaction, LBHI, an affiliate of LBSF, executed the Guarantee of Lehman Brothers Holdings Inc., dated July 14, 2005 (the "Guarantee"), which is a Credit Support Document (as defined in the Agreement) that guaranteed the performance of LBSF's obligations under the Transaction.

**B. LBSF's Breach of the Agreement**

106. Under the Confirmation, LBSF was obligated to make fixed payments to CPT 207 on the twentieth day (or the first business day thereafter) of each March, June, September, and December, commencing on June 20, 2005. On September 22, 2008, LBSF was required under the Confirmation to make a Fixed Payment of $65,277.78 to CPT 207 in respect of the Transaction. It failed to do so.

107. Section 5(a)(i) of the Master Agreement provides:

> **5. Events of Default and Termination Events**
>
> (a) ***Events of Default***. The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes an event of default (an "Event of Default") with respect to such party:—
>
> (i) ***Failure to Pay or Deliver***. Failure by the party to make, when due, any payment under this Agreement or delivery under Section 2(a)(i) or 2(e) required to be made by it if such failure is not remedied on or before the third Local Business Day after notice of such failure is given to the party;

108. On September 23, 2008, CPT 207 notified LBSF and its Credit Support Provider, LBHI, that LBSF had failed to make the required Fixed Payment to CPT 207, and that if this failure was not cured on or before September 26, 2008, such failure would constitute an Event of Default under Section 5(a)(i) of the Master Agreement.

109. LBSF did not timely remedy its failure to make the required Fixed Payment, and consequently on September 29, 2008, CPT 207 notified LBSF and LBHI that LBSF's failure to make such payment constituted an Event of Default, and CPT 207 designated September 29, 2008, as the Early Termination Date in respect of the Transaction in accordance with Section 6(a) of the Master Agreement. In such notice, CPT 207 informed LBSF and LBHI that LBSF

was required to pay to CPT 207 on September 29, 2008 an Accrued Fixed Payment Amount equal to $70,138.89 and a Makewhole Amount equal to $422,416.33, for a total payment of $492,555.22 (the "Termination Payment").

110. Section 6(a) of the Master Agreement provides:

> If at any time an Event of Default . . . has occurred and is then continuing . . . the [Non-Defaulting] party may, by not more than 20 days notice to the Defaulting Party specifying the relevant Event of Default, designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all outstanding transactions."

**C. <u>Damages for LBSF's Breach of the Agreement</u>**

111. As a result of LBSF's default, under the Agreement, LBSF and LBHI are liable to CPT 207 for no less than $492,555.22 in damages.

112. Section 1(b) of the Master Agreement states that "[i]n the event of any inconsistency between the provisions of the Schedule and the other provisions of the Master Agreement, the Schedule will prevail."

113. Part 1(h) of the Schedule defines the applicable calculations for the amount payable in respect of an Early Termination Date:

> (h) **Payment on Early Termination.** "**Loss**" and "**Second Method**" will apply for the purpose of Section 6(e) of this Agreement; <u>provided</u>, <u>however</u>, that
>
> (a) Section 6(e) shall apply only where an Early Termination Date is designated by [LBSF] after an FSA Event of Default has occurred and is continuing;
>
> (b) **with respect to an Early Termination Date designated as a result of an Event of Default with respect to [LBSF] described in Section 5(a)(i) or Section 5(a)(viii), (i) [LBSF] shall pay to [CPT 207] the Accrued Fixed Payment Amount and any applicable Makewhole Amount under the Credit Swap Transaction on the Early Termination Date** and (ii) the terms of the Credit

> Swap Transaction shall continue to apply with respect to, and [CPT 207] shall be required to pay to [LBSF] after the Early Termination Date, any Cash Settlement Amount and any payment in respect of a Quotation (as defined in the Credit Swap Transaction) provided by [CPT 207] that would have been payable under the terms of the Credit Swap Transaction as a result of satisfaction of the Conditions to Settlement on or prior to the Early Termination Date, and no other termination payment shall be payable by either party and neither party shall have any further liability in respect of termination of this Agreement . . . .

Schedule, Part 1(h) (emphasis added).

114. Under Part 1(h) of the Schedule, as a result of LBSF's failure to make the required Fixed Payment, which constituted an Event of Default, LBSF was required to pay CPT 207 both the Accrued Fixed Payment Amount and the Makewhole Amount.

115. Part 1(h) of the Schedule defines the "Accrued Fixed Payment Amount" as the amount of the accrued and unpaid portion of Fixed Amounts for the period from and including the last Fixed Rate Payer Payment Date before the Early Termination Date to which Fixed Payments have been made through, but excluding, the Early Termination Date. Here, that amount was $70,138.89. Part 1(h) of the Schedule further defines the "Makewhole Amount" as the present value of the Fixed Amounts that would have been payable to CPT 207 after the Early Termination Date until the Scheduled Termination Date, minus the Accrued Fixed Payment Amount. Here that amount was $422,416.33.

116. Under Part 1(h)(b) of the Schedule, LBSF was required to pay to CPT 207 the Termination Payment. Here that amount was $492,555.22. No judgment has been rendered and no payment has been made with respect to the Termination Payment.

117. Under the Guarantee, LBHI has guaranteed full and faithful performance of all obligations owed by LBSF to CPT 207 under the Agreement, and therefore LBHI is liable to

CPT 207 for the full amount of the Termination Payment owed by LBSF to CPT 207 of no less than $492,555.22.

**D. CPT 207's Proofs of Claim**

118. LBHI commenced its Chapter 11 case in this Court on September 15, 2008, and LBSF commenced its Chapter 11 case on October 3, 2008.

119. Beginning on April 23, 2009, CPT 207 filed Proofs of Claims and Amended Proofs of Claim (the "Claims") in the chapter 11 cases of LBSF and LBHI, asserting claims under the Agreement and the Guarantee in the amount of $492,555.22 in connection with the terminated Transaction. On August 3, 2009, CPT 207 filed amended proofs of claim in the LBSF and LBHI bankruptcy cases. On September 14, 2009, CPT 207 submitted a Derivatives Questionnaire in connection with its claims against LBSF, including supporting documentation.

**FIRST COUNTERCLAIM**

**Declaratory Judgment**
*(Against LBSF and LBHI)*

120. Defendants repeat and reallege paragraphs 92 through 119 as though fully set forth herein.

121. An actual and justiciable controversy exists between the Defendants and the Debtors.

122. The Transaction qualifies as a "swap agreement" for purposes of Section 560 of the Bankruptcy Code. Section 560 of the Bankruptcy Code provides that a "contractual right" of a "swap participant" or "financial participant" to liquidate, terminate, or accelerate a "swap agreement" is not "stayed, limited or avoided" by the Bankruptcy Code.

123. The Defendants are entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that (i) CPT 207's termination of the Transaction as a result of LBSF's failure to make

a fixed payment was proper and provided for under the Agreement, (ii) Part 1(h)(b) of the Schedule is enforceable, (iii) CPT 207 calculated the Termination Payment of $492,555,22 as set forth in the Schedule, (iv) CPT 207's calculation was in compliance with applicable law, (v) the Termination Payment is due from the Debtors to CPT 207, (vi) the Debtors breached their obligations under the Agreement to pay CPT 207 the Termination Payment following CPT 207's termination of the Transaction, and (vii) no termination payment or other amounts are owed by any of the Defendants to the Debtors in connection with CPT 207's termination of the Transaction.

## SECOND COUNTERCLAIM

**Breach of Contract**
*(Against LBSF)*

124. Defendants repeat and reallege paragraphs 92 through 119 as though fully set forth herein.

125. The Agreement is a valid, binding and enforceable contract between CPT 207 and LBSF.

126. Under the Agreement, LBSF was required to make a Fixed Payment to CPT 207 on September 22, 2008, and its failure to make such payment, which was uncured after notice from CPT 207, constituted an Event of Default under the Agreement. Consequently, LBSF owes to CPT 207 a Termination Payment of no less than $492,555.22 in respect of the Transaction.

127. LBSF has breached the Agreement by failing to pay the amount due and owed to CPT 207, despite CPT 207's demand that it do so.

128. As a result of LBSF's breach of the Agreement, CPT 207 has suffered damages and is entitled to a money judgment against LBSF in the amount provided for in the Schedule of no less than $492,555.22 plus interest and costs.

## THIRD COUNTERCLAIM

**Breach of Contract**
*(Against LBHI)*

129. Defendants repeat and reallege paragraphs 92 through 119 as though fully set forth herein.

130. LBHI guaranteed LBSF's faithful performance of all of LBSF's contractual duties to CPT 207 under the Agreement.

131. The Guarantee constitutes a valid, binding and enforceable contract between CPT 207 and LBHI.

132. CPT 207 terminated the Transaction in accordance with the Agreement and LBSF owes the Termination Payment.

133. LBHI has breached the Guarantee by failing to pay the amount due and owed to CPT 207 by LBSF under the Agreement, despite demand therefor.

134. As a result of LBHI's default, CPT 207 has suffered damages and is entitled to a money judgment against LBHI in the amount provided for in the Schedule of no less than $492,555.22 plus interest and costs.

## FOURTH COUNTERCLAIM

**Attorney's Fees and Costs**
*(Against LBSF and LBHI)*

135. Defendants repeat and reallege paragraphs 92 through 119 as though fully set forth herein.

136. The Agreement is a valid, binding and enforceable contract between CPT 207 and LBSF, which LBSF has breached. Section 11 of the Agreement provides that LBSF's failure to abide by its terms entitles CPT 207 to an award of reasonable out-of-pocket expenses, including reasonable attorney fees.

137. LBHI has guaranteed LBSF's faithful performance of all of LBSF's contractual duties to CPT 207 under the Agreement, including LBSF's duties under Section 11 of the Agreement.

138. Defendants have been forced to incur out-of-pocket expenses including attorney fees because of the Debtors' failure to comply with the terms of the Agreement and the Guarantee.

139. Defendants are thus entitled to an award of attorney's fees, costs, and all other litigation expenses.

**PRAYER FOR RELIEF**

**WHEREFORE**, Defendants demand judgment against LBSF and LBHI as follows:

(a) Dismissing the Complaint against them;

(b) Declaratory judgment that:

(i) CPT 207's termination of the Transaction was proper and provided for under the Agreement,

(ii) Part 1(h)(b) of the Schedule is enforceable,

(iii) CPT 207 calculated the Termination Payment of $492,555.22 as set forth in the Schedule,

(iv) CPT 207's calculation of the Termination Payment was in compliance with applicable law,

(v) The Termination Payment is due from the Debtors to CPT 207,

(vi) the Debtors breached their obligations under the Agreement following CPT 207's termination of the Transaction, and

(vii) no termination payment or other amounts are owed by any of the Defendants to the Debtors in connection with the termination of the Transaction;

(c) Awarding Defendants damages in an amount to be determined, but no less than $492,555.22;

(d) Attorney's fees and costs;

(e) Such other legal and equitable relief as the Court deems just and proper.

Dated: New York, New York
January 25, 2013

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: ______________________
Thomas J. Moloney
Roger A. Cooper

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Defendants*